reaction. May it please the court, Kenneth Carpenter appearing on behalf of Mr. Benny Robinson. Before I start my argument, your honor, I'd like to just reinforce or make sure that the this case arose because it is unusual from the type of case that this court normally receives. This was not an original adjudication. This was not a case in which Mr. Robinson made a claim and the VA went through the duty to assist and did development in order to arrive at a decision as to whether or not he should or should not be awarded benefits. This happened as a result of what they call a Nehmer review. Nehmer comes from a class action lawsuit in which the VA conceded, confessed, settled the case and part of that settlement was that they would periodically do reviews when additional conditions were added to the list of diseases for the statutory presumption. What happened was that the VA went and looked back at what had taken place in Mr. Robinson's case because he had in fact made a prior application and had been denied for Agent Orange benefits which then triggered the Nehmer review which then required a decision. It is in that context in which it is in the look back that we have the extraordinary circumstances which took place in this case which were that a VA cardiologist who was treating Mr. Robinson ordered a specific test that would determine whether or not his disability had increased in severity and for reasons that are not explained by the record, 14 months went by before that examination took place. When they did the Nehmer review, they found that the initial degree of severity should be 30% based upon the records and that the condition should be increased from the date of the test results that came back showing the increase. That then gives rise, that is the background if you will, to this particular appeal. The Veterans Court made three specific errors. Can I interrupt you? Yes. I just have a factual question. Yes. At JA71, there is what I think is the physician's analysis of the veteran and it says about middle of the page that the patient is known to have coronary artery disease. He had a single vessel coronary angioplasty in 2003. It just kind of confused me because I thought the results of the test were to show that he had coronary artery disease. And so I didn't understand why this is referring to him having this disease in 2003. Well that's why I brought up the context of this because it is... That's why I asked the question. It was kind of the context. Eventually in the record, they changed the effective date back to the date of that surgery because the NEMR rules require, which is the first regulation that the court relied upon, is to give the benefit back to the date in which the medical records show that it arose. The original date selected, I believe it was 2005, was an incorrect date because they didn't look all the way back in and that has been eventually corrected. So the effective date is back to 2003. But what we're dealing with here is the original adjudication that assigned a 30% rating and then a 60% rating based upon the date of that test result that quantified, verified, corroborated the fact that his condition had, under the VA rating schedule, increased in severity and justified a 60% rating. So the decision that was corrected from 2005 to 2003, that was for the 30%? Well, they were required to give him 100% because of the surgery and then I believe they reduced it down to 30% after the surgery. So can you give me the context of exactly what this case is about? What this case is about is there is a 14-month time period in the record prior to the adjudication in which a VA cardiologist ordered tests because the patient exhibited some symptoms that he thought warranted further testing. Those tests, when administered 14 months later, verified that he met the qualifications for the 60% rating. But Mr. Carpenter, isn't this a question of fact as to whether the board was correct that there was no proof as of February 06 that he had this condition? In fact, the court said that the veteran stated he was doing very well as of February 2006. And so it's not for us, as you know, to look at the evidence as of a particular date and override the board and the court. What you say is correct, the application in this case is incorrect. But application of law is a fact. The application of that bar to consideration in this case is incorrect because the Veterans Court made three legal errors. They mistakenly concluded that the provisions of 3.816C applied and they do not. The Veterans Court said that the principles of equity do not apply and they do. And that Section 38 CFR 17.33A2 exists independently of the Veterans Benefit Scheme and it has no application to the assignment of an effective date under 5110B3. 5110B3 specifically says, Your Honor, that an effective date is to be assigned in accordance with the facts found. The question in this case is, are these the facts found that there was a 14-month delay in awarding the 60% rating because the VA did not follow 17.33A2 and promptly provide the medical test that had been ordered? 17.33 is a very general, basic provision. It doesn't deal with determining effective dates. With respect, Your Honor, I believe that that is the same error that the Veterans Court made. I believe you are incorrect because the statute, Congress specifically said that you assign the effective date in accordance with the facts found. So if you do not take into consideration the provisions of this statute which the VA imposed upon itself a burden to promptly provide medical treatment and medical tests, then you are wrong. And then that is where the equity portion of this comes into provision to potential application here. This court this week on Tuesday or Wednesday, I'm sorry I don't remember which date now, decided the Burris case. And the Burris case specifically dealt with the question of equity and found in the circumstances in the Burris and Thompson cases that equity did not apply for the relief that was sought there. However, this court at pages 15 and 16 of the slip opinion specifically says that there are circumstances, it said, excuse me, it is clear that the Veterans Court has authority to grant certain forms of non-substantive equitable relief required to enable the court to carry out its statutory grant of jurisdiction. We believe that that is applicable in this case. Now obviously we didn't have the benefit of that case law at the time in which we wrote the briefs in this case. But what that decision says is that the Veterans Court overstates the matter when it says, as it did in this case, that it has no equitable powers. It clearly does have equitable powers. But does it have, I think your arguments are two-fold. You first have to convince us that 38 CFR 3.813C doesn't apply in this case. And then your argument is, even if it does apply, they had the equitable power to ignore it, which might not be the same thing as having the equitable power to have equitable tolling. No, no, with respect, Your Honor, I was with you until that last meeting because it does not relate back to 3.816 because 3.816 has a single function. The only function under 816 is to ensure that the effective date goes back as far as possible. Only the effective date for the grant of benefits. And in this case, it did go all the way back and was eventually correctly applied to take the effective date back to 2003. The question here has to do with the stage rating in which from the period of, I think it's 2003 to 2006, that there was a 30% rating and then a 60% rating. The equitable tolling... You want the 60% rating to go back to 2003? No, only want it to go back 14 months. Or whatever the court deems to be a reasonable time for them to actually implement the test. That would be an issue. You're asking for February 2006. Are you asking for a remand for the court below to make that determination? Oh, I'm sorry. Yes, I am. I overstated. That's what Mr. Robinson is looking for ultimately in the outcome. From this panel, Mr. Robinson is only looking and I believe can only look for a remand to correctly apply the law in this case. You're asking for the 14 months. Isn't that right? Ultimately, yes, Your Honor. You tell us in your brief, and I'll ask the government, that they have never represented that the 14-month delay was reasonable. Yes. They've never challenged the fact that it was not reasonable.  So that that's a given that it was not reasonable. I believe that that's uncontested in this matter. Yes. And if it is in fact uncontested, then the provisions of 17.33 should be taken into consideration as part of the facts found. Because if there was an unreasonable delay in providing this test and the results of the test obviously determined that he was entitled to the 60% rating, he should be entitled based upon the facts found, being that he wasn't given that test for 14 months, should at least require consideration under 5110B3 for the facts found under both principles of equity and under the provisions of 17.33. That's correct, Your Honor. Okay. Let's hear from the government. Good morning. I want to start with a brief clarification. The history going back as far as the disability... Let's get right to the point, which I think is significant. The government is not saying that they acted reasonably in the 14-month delay. Isn't that correct? Well, we're not commenting one way or the other on that. I think one thing needs to be made clear on this is that scheduling the ECG in this case is a two-way street. We're not sure if the source of the delay the entire time was Mr. Robinson himself. That's not for this court to decide. That's behind us. I was remanded to determine that there was ever... You're saying there was no opportunity to... I'm saying that Mr. Robinson has never come forward and said, Okay, on these dates, I tried to make these appointments and I couldn't do it. If we look back at February 23, 2006, that's when he went to the cardiologist for the first time. He said that he was in good health, but he experienced slight chest pains or twinges. When he went back in November of 2006, it really had nothing to do with his heart condition. It had everything to do with blood clots in his legs. He'd been previously hospitalized in Texas... None of that is before us. I'm really trying to focus on what seems... From everything that we've seen, I have yet to see the government say they acted reasonably in not making the appointment until 14 months later and that the basis for the previous remand from the Veterans Court was to determine whether or not the delay was reasonable. Was it not? Mr. Robinson has never alleged, and she's never argued, that he tried to make these appointments and was unsuccessful or unable to do so at the VA. He hasn't had to. He has a 14-month delay. I can't see where the government ever says that's routine, that's standard. He has a burden to overcome to show that that's unreasonable. On its face, it's an unusual delay for someone with the problems that were represented. I don't know if it's unusual. I'm not sure about that. Again, I don't know the circumstances of the cause of the delay. This went back to the BVA on remand to ascertain whether or not the 14 months was due to Mr. Robinson or due to the government. That was the basis for the remand from the Veterans Court.  Respectfully, Your Honor, even if, okay, let's assume that this hypothetical and this hypothetical, the government was the sole source of the 14-month delay, even if that notion were true, it still doesn't allow Mr. Robinson to be entitled to a higher effective disability rating absent any medical evidence. Now we get to this interpretation of the statute and the regulation of the obligation of the government to respond expeditiously to the veterans. But I think, Your Honor, and this is what I wanted to start with, was a minor clarification, and Mr. Robinson's counsel did try to lead with this. These circumstances are not like a normal claimant who has filed a claim and then seeks care in order to build his or her case. This was a situation in 2003 where Mr. Robinson experienced a heart attack. From January 2003 to May 2003, he was diagnosed as having a 100% disability rating for coronary artery disease. In May 2003, it goes to 10%. It was never 30%. So from May 2003 until June, or excuse me, April of 2007, it was 10%. And so the service connection for NEMER class members like Mr. Robinson for coronary artery disease was not established until 2010. It's not before us on this appeal. But I understand. But I think if we're talking about the VA's duty or its obligation to assist a veteran in asserting or creating evidence for his or her claim, we have to look back and remember that in 2006-2007, there was no claim pending. He told the Veterans Court that the VA automatically, without discussion, gave him the effective date when the tests were conducted. So he asked the Veterans Court for an earlier date. The Veterans Court sent it back to the BVA to consider his situation of the earlier examinations. That was the issue on this appeal as to whether the 14-day, 14-month delay was reasonable or not. And it made quite a large impression on me that the government has never, as far as I could see, taken the position that it was reasonable to delay 14 months before conducting the tests that were ordered by the cardiologist. And that was the basis for the remand. Now, where are we? Well, I think, Your Honor, you're saying that, you know, the central issue in this case is this 14-month delay. I see the issue a slight bit differently. The central issue in this case is Mr. Robinson is seeking a higher disability rating for those 14 months, which would, in effect, be a monetary award based purely on speculation. There's no evidence that would justify it. That wasn't the basis of the Veterans Court's remand. They didn't, say, figure out how sick he was during that 14-month period. They said, look at these dates that you, the VA, didn't mention, apparently may not even have known existed. Well, I think, Your Honor, they actually said, I mean, part of their remand was, what does the medical evidence show with regard to the stage rating that should have been in effect for these various time periods? That's what they were looking at. And we were remanded to determine whether he was given the statutory regulatory prompt detention. In the 14-month period. I don't think there's any statute or regulation that the VA would fall afoul of. Excuse me, Your Honor? Doesn't the regulation say that the veterans shall receive prompt detention reasonably? I think, Your Honor, if we're going to focus on 17.33, that's the Patient's Bill of Rights. That doesn't have a binding effect on care or how it should be administered. As the board below said, it's hortatory. These are guidelines to be used by the VA. But the actual relevant regulations are found at 5110, 3.400. But the VA has never argued that they acted reasonably. If they had, who knows? We might find some basis for deference to that view. Aren't we reviewing the decision of the court? March 20th, 2017, where the court notes that the board found that an effective date earlier than April 2007 was not warranted because he didn't show that he met the criteria. In other words, it's a lack of proof prior to April 2007. Isn't that the decision we're reviewing? I believe that's the central issue, Your Honor, is that there was no proof. And at the end of the day, what this comes down to is this request for 14 months. But it's based... Mr. Robinson's position essentially is one of policy. It's a policy position. No, they said there was no proof because the test hadn't been run. But what he posits, what he would have the court do is essentially create a policy guideline wherein whenever a doctor thinks that a test or a diagnostic examination of some sort is necessary, that that would start the clock running. And at that point, or within 30 days of that point, this particular veteran would be entitled to a higher disability rating. And that's simply outside the regulations and statutes that govern the claims process and the claims adjudication process. So I think, again, at the end of the day, this is a policy recommendation that Mr. Robinson wants to establish. And there's simply no support in the record. It would be completely speculative to jump him from 10% to 60% at any time. That's not his argument. He agrees there's no supporting record. He says the reason there's no supporting record was because it took them 14 months to run the test that was ordered. But what he relies upon... And when the test was run, it supported the record. But what he relies upon in making that argument, Your Honor, 17.33, based on my research, no claimant has ever utilized that particular regulation to support a higher disability rating. In fact, if we look at the congressional history of the Patients' Bill of Rights, it makes clear that these are guidelines that were not meant to supplant federal regulations or statutes that govern the claims process. They were simply meant to be goals. Is it really fair to say that he's relying on it to get a higher rating? It's more accurate probably to say he's relying on it to get a higher rating earlier in time. I think that's what I mean, Your Honor. If that was unclear, he's trying to get a higher rating in time. The higher rating obviously came once the ECG had been performed in April 2007. But no higher rating. He's trying to... He already has the rating of 60%. That's not in dispute. He just says it should run 14 months longer. But what's in dispute is that if he'd had the ECG 12 months prior or 10 months prior or 6 months prior, that it would have shown that he was qualified for a 60% rating. And that's purely speculative. It falls afoul of 5110. So I think no matter how you look at it... And also your position that when you look at the effective date that that is tied to 3.81316C? Yeah, I think it is. And again, I think it has to do with the unique nature... Because that is the government's position, right? So I think that Mr. Robinson's counsel is attempting to separate the 3.816 and 5110. First of all, the Veterans Court addressed both and noted that Mr. Robinson had failed to put forth evidence that would be sufficient pursuant to 5110. So that is in the Veterans Court's decision. But beyond that, I think if we're looking back at this, 3.816, all that did in 2010, after coronary artery disease was established as a service-connected disability for NEMRA class members, that enabled Mr. Robinson, pursuant to 3.816, to be entitled for that service connection because he was a NEMRA class member. 5110, though, kicks in and establishes what his exact rating would be for the relevant time period. So I don't think we can look at them separately. I certainly don't think that the Veterans Court was mistaken in relying on both 3.816 and 5110. Do we have before us a decision by the court concerning the behavior of the VA? We do not, Your Honor. It's not in the record, and certainly Mr. Robinson has never put forth any evidence of his multiple attempts to try and receive the CCG. Our understanding is once he saw the doctor again in November 2006, the doctor noted that he was still needing to have the CCG performed. It was finally performed, and it was at that point that he went from 10% disability to 60% disability. So the government's position is that he had no entitlement to prompt testing. No, that's not our position, Your Honor. I think the position is that I think 14 months is a significant period of time for an ECG. I'm not sure. Your position is 14 months is prompt? No, I'm not saying it's prompt, but I'm saying the reason that it was 14 months is something that we don't know, and I think Mr. Robinson is laying the blame at the feet of the government. You now have a record. That was the basis. That was the remand. So now there's a record of all his requests for appointments. There's nothing in the record about that, Your Honor. He's never made specific arguments or included any information that would substantiate he tried to receive. You're saying that, therefore, 14 months is presumed to be his fault? I'm not saying it's presumed to be anyone's fault. I'm saying that it's a two-way street. The VA can schedule something, and Mr. Robinson can cancel it. It can decide that he doesn't think he needs the ECG, perhaps at the time, because he was only rated as having a 10% disability. The real point is we don't need to get into the possibilities of who's at fault and how much. I agree, Your Honor, and I think that, you know, I— You simply review the court's affirmance of the board's decision that there's a lack of evidence before April 07. That's correct, Your Honor, and I think just to address very quickly the Wilkie case, which was just published two days ago, I think Mr. Robinson's counsel and I, we look at that case and we read it very differently. I read that case as actually supporting our position because there the federal circuit did say, this court did say, the Veterans Court cannot invoke equity to expand the scope of its statutory jurisdiction. Again, the relevant statutes here in the regulations are 5110, 3.400, and 3.816. And that's probably not the Wilkie case, is it? I'm sorry, the Burris case, excuse me, the Burris v. Wilkie case. But they established that there has to be medical evidence that would substantiate the disability rating, and here there was simply none. And that's the reason why, you know, I don't think the Veterans Court— I think the Veterans Court was correct in saying it didn't have the equitable power to give Mr. Robinson what he wanted, and I think at the end of the day, the Veterans Court correctly applied the proper regulations and statutes, which were not 17.33. If there are no further questions, I'll forgo these for the rest of my time. Okay. Thank you. Thank you. Mr. Carpenter. May it please the Court, this Court's case law has been established for some time that when a veteran presents an issue and the Veterans Court decides to ignore that issue, that that does not in any way diminish this Court's jurisdiction. Mr. Robinson, in his case before the Veterans Court, presented the question of law as to whether or not 3.16 controlled the disposition of this case. Excuse me, 3.816. 3.816 does not control the disposition of this case. It only controls the date to begin the award, which they got wrong in the first instance and correctly took it back to 2003. Secondly, he presented the question of equity. The Court said no. So they made a determination, Your Honor. They made a decision that they did not have equity. This Court's decision in Burris calls that into question. Burris, at the very least, says that it does not exclude equity in all circumstances and specifically said that it applies in terms of equitable tolling and even applies in terms of equitable estoppel, which implicitly overrules a precedential decision of the Veterans Court that says equitable estoppel does not apply. Thirdly, Mr. Robinson presented below the question of whether or not he was not entitled to the benefit of treatment under the provisions of 1733. The Veterans Court said he was not. That is a legal determination. So there were three specific legal determinations made by the Veterans Court, separate and apart from the fact that they found that there was no evidence to support it. And the reason there was no evidence to support it was because of the delay of the VA in getting the test. The government says that it was up to Robinson to establish that he requested earlier testing and that there was no evidence on his side. Your Honor, to be polite, that argument is bogus. There is no basis for that in the law. There is no burden on the veteran. He does not control scheduling. There is nothing in the evidence that suggests that he did not simply wait until the VA told him to show up for his appointment. And when the VA told him to show up for his appointment, he showed up for his appointment, and that appointment verified that his disability should have been rated at 60%. The overarching question here is the nature of this system. This is either a veteran-friendly system or it's a system that the government just told you about in which we shift the burden to the veteran to prove something. Mr. Robinson should not have the burden to show that he didn't cause this delay. The delay has not been disputed. The delay took place here. That implicates the provisions of 1733, and the government is completely wrong when it says that the provisions of 38 U.S.C. 5110 apply to rating. They do not apply to rating. Rating is applied based upon the diagnostic code, and that is in Part 3 of the Code of Federal Regulations. The statute at 5110 pertains only to the assignment of the effective date, and it uses the congressional language that the effective date shall be determined based upon the facts found. The decision of the Veterans Court precluded consideration of the facts as they existed in the record, and the facts as they existed in the record were that the VA, without explanation, delayed getting this test for 14 months. That requires a remand by this court for consideration, by the Veterans Court. Unless there's further questions from the panel? No questions. Thank you very much, Your Honor. Thank you. Thank you both. The case is taken under submission.